﻿Citation Nr: AXXXXXXXX
Decision Date: 01/30/20 Archive Date: 01/30/20

DOCKET NO. 190404-3281
DATE: January 30, 2020

REMANDED

Entitlement to service connection for hypertensive heart disease is remanded.

Entitlement to service connection for hypertension is remanded.

Entitlement to service connection for hypogonadism is remanded.

Entitlement to service connection for obstructive sleep apnea (OSA) is remanded.

REASONS FOR REMAND

The appellant is a Veteran who served on active duty from February 2001 to February 2004, from July 2006 to December 2007, and from January 2010 to September 2010. 

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. 

An October 2017 rating decision by a VA Regional Office (RO) denied these claims.

In response, the Veteran chose to participate in VA’s AMA test program, RAMP, the Rapid Appeals Modernization Program. This decision is being written consistent with the new AMA framework. The Veteran selected the Higher-Level Review lane when he submitted his RAMP election form on June 12, 2018. Accordingly, the February 2019 RAMP higher level rating decision considered the evidence of record as of the date VA had received his RAMP election form. When appealing to the Board he elected the “evidence-submission” lane for processing his claims; however, the 90-day grace period he had to submit additional evidence since has elapsed. 

Under the prior “legacy” appeals system, new and material evidence was required to reopen a claim that had been previously considered and denied, if that determination had become final and binding. 38 U.S.C. §§ 5108, 7105; 38 C.F.R. §§ 3.104(a), 3.156, 3.160(d), 20.200, 20.302, 20.1103. Under the new AMA framework, however, new and relevant evidence is required. Pub. L. No. 115-55, § 5108, 131 Stat. 1105, 1109. In the February 2019 RAMP decision that considered these claims reopened, the agency of original jurisdiction (AOJ), i.e., the RO, determined that new and relevant evidence had been received to warrant re-adjudicating these claims. The Board is bound by this favorable finding. AMA, Pub. L. No. 115-55, § 5104A, 131 Stat. 1105, 1106-07. As such, the Board need not determine whether these claims should be reopened, instead, may proceed immediately to addressing the underlying merits of these claims. However, prior to that, there are pre-decisional, duty-to-assist errors requiring correction.

1. 2., Entitlement to service connection for hypertensive heart disease and hypertension are remanded.

The Veteran is claiming entitlement to service connection for hypertensive heart disease and hypertension because he believes they are secondary to his service-connected posttraumatic stress disorder (PTSD) or, in the alternative, directly related to his active duty service. Notably, his STRs show some marginal or even elevated blood pressure readings while in service, though not persistently elevated blood pressure as to, in turn, have resulted in an actual diagnosis of hypertension.

In August 2017 and February 2019 VA opinions, the examiners concluded against the Veteran’s claims for secondary service connection. The February 2019 examiner noted that the Veteran has essential hypertension which accounts for 95 percent of hypertension cases and, by definition, is not secondary to or caused by any other disease, including PTSD. This examiner further indicated that, in the remaining 5 percent of cases of secondary hypertension, PTSD is not a listed cause (nlm.nih.gov). However, the August 2017 and February 2019 VA examiners did not address the additionally posited theory of direct service connection. 

There also must be indication of whether the Veteran’s PTSD, even if not causing his hypertensive heart disease or hypertension, alternatively is aggravating them. Secondary service connection requires consideration of both causation and aggravation. 38 C.F.R. § 3.310(a) and (b). See also Allen v. Brown, 7 Vet. App. 439, 448 (1995). Notably, the August 2017 examiner conceded that, while “PTSD is not considered a cause for hypertension, it can sometimes make hypertension difficult to control”.

As such, the Board finds that further development is needed to address both direct and secondary theories of entitlement to service connection for these disabilities.

Finally, the Board notes that hypertension is evaluated under Diagnostic Code 7101 as hypertensive vascular disease, and other cardiac conditions like hypertensive heart disease are evaluated under separate Diagnostic Codes based on symptoms such as cardiac hypertrophy. 38 C.F.R. § 4.104. Here, VA examiners have diagnosed the Veteran with hypertension but did not elaborate on whether he has a separately diagnosable cardiac condition to include hypertensive heart disease. Thus, clarification of this is needed.

2. Entitlement to service connection for hypogonadism is remanded.

The Veteran also contends that his hypogonadism is secondary to his service-connected PTSD.

An August 2017 VA examination report contains an opinion of the examiner that it is less likely than not (less than 50 percent probability) that the Veteran’s hypogonadism is proximately due to or the result of his service-connected PTSD. The examiner explained that the most common risk factors for secondary hypogonadism include “advanced age, obesity, a diagnosis of metabolic syndrome and a poor general health status. Additional risk factors are hemochromatosis and unmanaged sleep apnea.” He concluded that there is no evidence the Veteran’s service-connected PTSD is the cause for his hypogonadism. However, the examiner did not additionally discuss the secondary theory of aggravation. 38 C.F.R. § 3.310 (a) and (b); Allen v. Brown, 7 Vet. App. 439, 448 (1995). Thus, as it stands, the Board cannot make a fully-informed decision on the issue of entitlement to service connection for hypogonadism because the VA examiner has not addressed all potential bases of entitlement. Consequently, supplemental medical comment is needed. See Barr v. Nicholson, 21 Vet. App. 303 (2007).

3. Entitlement to service connection for OSA is remanded.

As well, the Veteran contends that his OSA is secondary to his service-connected PTSD.

On January 2019 VA examination, the examiner concluded there is no definitive evidence that the Veteran’s PTSD aggravated his OSA – noting that PTSD is a psychiatric condition that is not known to cause or worsen OSA. 

A prior October 2018 private medical opinion submitted in support of the Veteran’s claim contrarily notes that his OSA is more likely than not due to his PTSD. This commenter noted that there is scientific research showing a connection between anxiety, PTSD and sleep apnea. [There has been citation to a prior Board decision awarding service connection for sleep apnea secondary to PTSD. However, prior Board decisions are binding only on the specific case decided; the decision cited has no precedential value in the case at hand. 38 C.F.R. § 20.1303. Moreover, each appeal involves different factual circumstances, making it inappropriate to determine the Veteran’s claim based on another Veteran’s particular disability picture.] The private provider noted that, although the Veteran is obese and obesity can cause sleep apnea, his obesity is also considered service-connected due to his service-connected disabilities and psychotropic medications reducing his ability to do normal activities. 

Although obesity, itself, is not a disability for VA compensation purposes, it may act as an “intermediate step” between a service-connected disability and a current disability that may be service connected on a secondary basis under 38 C.F.R. § 3.310. See VAOPGCPREC 1-2017; see also Marcelino v. Shulkin, No. 16-2149 (Vet. App. Jan. 23, 2018). The private provider’s alternatively raised theory of entitlement has not been adequately addressed in a medical advisory opinion and must be before deciding the appeal of this claim. 

Accordingly, these matters are REMANDED for the following action:

Obtain addendum medical opinions concerning the etiologies of the Veteran’s claimed OSA, hypogonadism, hypertension and hypertensive heart disease. All relevant evidence, including a complete copy of this remand, must be reviewed by the examiner. The examiner should provide opinions on the following:

(a.) Identify (by diagnosis) each cardiac condition entity found (or shown by the record during the pendency of this appeal)?

(b.) Is at least as likely as not (a 50% or better probability) that the Veteran’s OSA and hypogonadism were caused OR are aggravated by his service-connected PTSD? *The prior opinions only addressed causation, so need to additionally address whether there is aggravation. *The examiner(s) must also remain mindful that a recent precedent case clarified that secondary service connection does not require “permanent” worsening of the condition being claimed by the service-connected disability. See Ward v. Wilkie (16-2157, 17-1204).

Regarding OSA, the opinion should include consideration of the following: (1) whether the Veteran’s service-connected disabilities caused him to become obese; (2) if so, whether the obesity was a substantial factor in causing the claimed OSA; and (3) whether the claimed OSA would not have occurred but for obesity caused by service-connected disabilities. In so doing, the examiner should comment on the significance, if any, of the October 2018 private medical opinion submitted in support of the Veteran’s contention of secondary service connection. 

(c.) Is it at least as likely as not (a 50% or better probability) that the Veteran’s hypertension or any cardiac condition warranting a separate diagnosis, so including hypertensive heart disease, arose during the Veteran’s, or within a year of his discharge, or is otherwise etiologically related to his service - including caused OR aggravated by his PTSD? *The opinion must address both causation and aggravation. 

 

The examiner must discuss the rationale for all opinions, to specifically include commenting on the conflicting findings already in the record, expressing agreement or disagreement with each, and discussing the reasoning for the agreement or disagreement

 

 

KEITH W. ALLEN

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board P. Poindexter

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.